STATE OF MINNESOTA *vs.* T. B. WELLMAN.

November 4, 1885.

**Larceny—Illuminating Gas.**—Illuminating gas may be the subject of a larceny.

**Same—Intent.**—To constitute larceny it is not necessary that the property be taken with intent to convert it to the taker's own use. It is sufficient if it be taken with the felonious intent to convert it to the use of a person other than the owner.

**Same—Conviction Sustained by Evidence.**—Evidence considered, and *held* sufficient to sustain the conviction.

Appeal by defendant from a judgment of the Municipal Court of Minneapolis, adjudging him guilty of the larceny of five thousand feet of illuminating gas, and imposing a fine of $50 and costs. The action was tried by the court, a jury being waived.

*Cooley, Akers & Cooley,* for appellant.

*William J. Hahn, Attorney General,* and *James M. Martin,* for the State.

MITCHELL, J.   The defendant was charged with the larceny of a quantity of illuminating gas of the value of $12.50, and the question here is whether the evidence justified his conviction.   That illuminating gas may be the subject of a larceny cannot admit of a doubt. *Regina* v. *White*, 6 Cox, Cr. Cas. 213; *Com.* v. *Shaw*, 4 Allen, 308.

That a larceny was committed in this case by some one is undisputed.   It was committed by connecting, with a piece of lead pipe, the two arms of the service-pipe at the place where the meter had been detached, and then turning the stop-cock so as to allow the gas to pass through the service-pipe in the house, where it was turned on at the burners, ignited, and used.   The commission of the offence included a series of successive acts, viz.: procuring the connecting pipe, making the connection with it, turning the stop-cock in the service-pipe in the cellar, and finally turning on the gas at the burners and lighting it; and, of course, until this last act the commission of the larceny was not consummated.   But this being a misdemeanor in which there are no accessories, any one who sustained the relation to the offence which would, in case of a felony, have made him an accessory before the fact, would be a principal.   A person who procured this lead pipe with which to make the connection, for the purpose and with the intent of effecting the larceny, would be equally guilty with his confederates or associates who made the connection or turned on or lighted the gas, although he might not in person have actually assisted in doing these latter acts.   Now, the evidence in behalf of the state showed that defendant was an inmate of this house, which was a boarding-house kept by a Mrs. Wilcox; that it was he who ordered the gas company to put in a meter and furnish gas, and agreed to pay for the gas furnished; that the meter was taken out by the gas company on the 26th of January, 1885; that on the 8th of February the defendant went to a plumber, and ordered, paid for, and took away a piece of lead pipe about a foot long. It also appears from the evidence that the connection must have been made, and the gas turned on, at or about the time the defendant obtained this pipe, for it is shown that the use of gas in this house was resumed a few days after the meter was taken out, and continued to be so used until the fact was discovered by the gas company on the

5th of March. During all this time defendant was an inmate of the house. The piece of lead pipe with which this connection was made was positively identified by the plumber as the identical piece which defendant ordered from him and took away on the 3rd of February. When the state rested, the defendant, as a witness in his own behalf, admitted that he ordered this pipe made, paid for it, and took it away, and that he had it made for the very purpose for which it was used.

If the evidence had stopped right here, there could have been no doubt, it seems to us, but that it would have warranted defendant's conviction. But he proceeded further to testify that he intended to put the pipe where it was placed, but did not do so; that he bought it intending to use it for connecting the pipes, but on reflection concluded not to do it, and did not do it; that when he entered the hall in the basement of the house with the pipe, he met one Gould, (Mrs. Wilcox's brother,) who asked him what it was for; that he told Gould what he had intended to do with it, but also told him that he had concluded not to do it; *that it would not be a prudent thing to do.* He further says that he then threw it in the cellar-way and left it, and never saw it afterwards until he saw it in court; that he did not request any one to affix it to the service-pipes, nor suggest it to any one; that he did not touch the stop-cock or turn on the gas from the service-pipes, and does not know who did. Now, if this was entirely true, of course defendant was not guilty, and if the court was bound to accept it as true, he ought not to have been convicted; for if defendant changed his mind and abandoned his intention to commit the crime, and subsequently some other person, on his own motion, and not at the request or instigation of defendant, committed the offence, and, in doing so, found and used this pipe, the mere fact that defendant had previously procured it with intent himself to commit the act would not make him guilty of the crime.

But a court or jury is not always bound to give equal credence to all parts of a witness's testimony. When a defendant thus testifies in his own behalf they may often be justified in believing one part of his evidence and disbelieving another. Now, at first sight it may seem as if defendant's testimony was a candid statement of

all the facts, but further reflection, we think, might materially modify any such impression, and lead to the conclusion that defendant had more to do with this matter than he admits. He is entitled to no special credit for admitting that he procured this pipe for the purpose of making this connection, for the state had clearly proved this, and the only feasible way out of it left was for defendant to admit that fact, but deny that he carried his intention into effect. The impression that he attempts to convey by way of explanation of his conduct,—viz., that he was exasperated or "hot" at what he thought a mean trick on part of the gas company in taking out the meter, but on reflection concluded afterwards not to commit his intended act,—is not well supported by the fact that he procured this pipe eight days after the meter was removed,—certainly a sufficient time in which to cool off. It is also suggestive that this alleged change of mind came over him after he had obtained the pipe and brought it to the house, and that even then he not only explained its intended use to his landlady's brother, but also left it in so convenient a place for future use. It will also be observed that according to his own testimony his alleged abandonment of his illegal design was not the result of conscience, but of prudential reasons. His evasive and equivocal attempt on cross-examination to deny that he ever noticed the gas burning in the house of which he was a regular inmate is, to say the least of it, rather suspicious. Under these circumstances we think the court had a right, if he saw fit, to discredit this exculpatory testimony of the defendant, and, there being enough other evidence to warrant the conviction, we cannot say that the court erred in finding him guilty.

There is no force in the suggestion that defendant could not be guilty of larceny in taking this gas because it was not taken with intent to convert it *to his own use,* but to the use of Mrs. Wilcox, the proprietress of the house. We think it is enough to constitute larceny if the property is taken with the felonious intent to convert it to the use of a person other than the owner. But even if it were necessary that it be taken with intent to convert it to the taker's own use, this is sufficiently established in this case by the fact that it was taken with the intent to use it in the house of which defendant was an in-

mate, and where he would enjoy the benefit of it in common with others.

Judgment affirmed.

GILFILLAN, C. J., (*dissenting.*) I think the evidence fell considerably short of showing defendant to have committed the offence charged. It is pretty clear that he did not attach the piece of pipe procured by him, and we can conclude that it was attached by some one else on his instigation or suggestion only by conjecture. I therefore dissent.